**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AUG 1 5 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WILLIAM J. RICHARDET, and )<br>CARDINAL LAWN & LANDSCAPE INC., )<br>)<br>Defendants. ) | **4:19CR674 HEA** |

## INFORMATION

The United States Attorney charges that:

## COUNT ONE
### (Conspiracy to Commit Visa Fraud)

### I.    INTRODUCTION

At all times pertinent to this Information:

1.     The United States Department of Homeland Security (DHS), Citizenship and Immigration Services (CIS) is an agency of the United States, responsible for processing and reviewing applications for immigration benefits and employment-based visa petitions pursuant to the Immigration and Nationality Act.

2.     The United States Department of Labor (DOL), Employment and Training Administration (ETA) is an agency of the United States, responsible for processing, review, certification, and approval of Applications for Temporary Employment Certification (Form 9142) pursuant to the Immigration and Nationality Act.

3.     Throughout the United States, each state has its own State Workforce Agency

(SWA) authorized by the ETA to administer a portion of the temporary work visa programs covered by the Immigration and Nationality Act. The Missouri Division of Workforce Development (MDWD) is a state agency designated for the initial receipt of ETA Form 750 (Application for Alien Employment Certification) on behalf of the DOL.

4.      The Department of State (DS) is an agency of the United States responsible for reviewing and processing applications filed by aliens located abroad for non-immigrant visas filed at United States Embassies and Consular Offices.

5.      Under United States laws and regulations, foreign nationals are not permitted to work in the United States unless they obtain prior authorization from the United States government. The H-2B Program allows U.S. employers or their agent who meet specific regulatory requirements to bring foreign nationals to the United States to fill temporary non-agricultural jobs. A U.S. employer, or its agent as described in the regulations, must file Form I-129, petition for Nonimmigrant Workers, on a prospective worker's behalf. H-2B visas are typically issued to employers experiencing one-time occurrence, peak load, seasonal, or intermittent needs that cannot be filled with U.S. labor. H-2B visas are typically issued for a period not-to-exceed one year, with the potential for two one-year extensions (three years of total benefit).

6.      Pursuant to federal law, an employer must file a Form 9142 with the ETA. Form 9142 is an attestation of certain standards that the employer must meet, which include but are not limited to number of workers, job description, wage requirements, working conditions, payroll deductions, and attestation that H-2B workers not be employed outside of the listed geographical location. Appendix B.1 to Form 9142 requires the employer to certify that, among other things, the job opportunity is a bona fide, full time, temporary position, to take full responsibility for all information on the form, and to sign and attest that all of the information on the form is true and

2

accurate under penalty of perjury.

7.      If ETA certifies the application for temporary labor certification, the form is returned to the petitioning employer with a stamped certification and signature of the ETA certifying officer, along with a "Final Determination Letter" notifying the employer that their request has been certified. A temporary labor certification is valid only for the number of aliens, the occupation, the geographical area of employment, the specific occupation and duties, and the period of time the employer specifies. Therefore, if a petitioning employer causes a temporary H-2B alien worker to enter the United States to work for an employer other than the petitioning employer which received the labor certification, the alien's work authorization and immigration status is rendered invalid.

8.      After ETA certifies an employer's temporary labor certification, the employer must file a Form I-129 (Petition for Non-Immigrant Worker) with CIS. On the Form I-129, the employer is required to specify the job in which the foreign national will be employed, the address at which the work will be performed, the wage, the current number of foreign nationals employed, and the employer's gross and net income. The employer is also required to sign the Form I-129 petition under penalty of perjury, attesting that the position and the evidence submitted with it is true and accurate. The Form I-129 also states that the petitioner will notify DHS if an H-2B worker fails to report to work within five days after the start date on the petition or if a worker absconds or is terminated.

9.      Pursuant to DOL regulations, the petitioning employer on the Form I-129 is the only entity authorized to employ the temporary H-2B alien workers. Thus, if the temporary H-2B alien enters the United States and works for an employer other than the petitioning employer, the H-2B alien's work authorization and immigration status is rendered invalid.

3

10.     After DOL and DHS approve the employer's application, the foreign worker must appear for an interview before DS Consular Officer at an overseas U.S. Embassy or Consulate. Following consular approval, the H-2B visa is issued.

11.     CARDINAL LAWN & LANDSCAPE INC. (CARDINAL) is a lawncare and landscaping company that operates in the Eastern District of Missouri.   CARDINAL was incorporated in the State of Missouri in 2002.  CARDINAL's principal place of business is in High Ridge, Missouri.  Since at least 2012, William J. Richardet ("Richardet") has been the President of CARDINAL.

12.     COMPANY A, COMPANY B, COMPANY C, COMPANY D, COMPANY E, and COMPANY F are all landscaping businesses based in the Eastern District of Missouri. COMPANY G is a gutter install business based in the Eastern District of Missouri.  Collectively, they are referred to as the "COMPANIES."

## II.     THE CONSPIRACY

13.     Beginning in or around January 2012 and continuing to about December 5, 2017, in the Eastern District of Missouri,

**CARDINAL LAWN & LANDSCAPE INC.,**
and **WILLIAM J. RICHARDET,**

the defendants herein, did knowingly conspire, combine and agree with the COMPANIES, to commit the following offenses against the United States:

a.     To knowingly subscribe as true, under penalty of perjury (as permitted under Title 28, United States Code, Section 1746), false statements with respect to material facts in applications, affidavits, or other documents required by the immigration laws and regulations prescribed thereunder, a criminal offense under Title 18, United States Code, Section 1546(a) (paragraph four);

4

          b.        To utter, use, attempt to use, possess, obtain, accept, or receive any immigrant or non-immigrant visa or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to have been procured by means of any false claim or statement, a criminal offense under Title 18, United States Code, Section 1546(a) (paragraph one); and

          c.        To make a materially false, fictitious and fraudulent statement or representation in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, a criminal offense under Title 18, United States Code, Section 1001(a)(2).

## III. MANNER AND MEANS

    14.     The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

          a.        It was part of the conspiracy that Richardet offered to illegally sub-contract CARDINAL H-2B workers to the COMPANIES.

          b.        It was part of the conspiracy that Richardet agreed to illegally sub-contract CARDINAL H-2B workers to the COMPANIES.

          c.        It was part of the conspiracy that CARDINAL presented and Richardet caused to be presented, to ETA, false and fraudulent statements in the supporting documents for temporary labor certifications by overstating CARDINAL's labor need so that Richardet had extra H-2B workers to lease to the COMPANIES.

          d.        It was part of the conspiracy that CARDINAL presented and Richardet caused to be presented, to CIS, false and fraudulent statements in petitions for H-2B workers visas by claiming that CARDINAL would exclusively employ the alien, that the alien would perform

solely non-agricultural work, and that the alien would be employed on a temporary or seasonal basis when they well knew that such statements were false.

        e.      It was part of the conspiracy that Richardet leased CARDINAL H-2B workers obtained by false statements to the COMPANIES on a weekly basis for profit, including through an administrative fee of $15 per leased worker per pay period.

        f.      It was part of the conspiracy that Richardet required the COMPANIES to reimburse CARDINAL for its costs related to travel and visa expenses of CARDINAL H-2B workers.

        g.      It was part of the conspiracy that Richardet required the COMPANIES to provide tools, equipment, and uniforms to CARDINAL H-2B workers when providing services for the COMPANIES.

        h.      It was part of the conspiracy that Richardet took steps to conceal from authorities the unlawful nature of the H-2B leasing arrangement with the COMPANIES, including by requiring the COMPANIES to use CARDINAL time sheets when recording the hours worked of CARDINAL H-2B workers and by paying CARDINAL H-2B workers checks processed through CARDINAL's payroll system.

## IV.   OVERT ACTS

        15.      In furtherance of the conspiracy and to effect the objects of the conspiracy, the conspirators committed and caused the following overt acts:

        2012 Leased Workers

        a.      At a time before April 2012, Richardet agreed with Company A and Company B to lease CARDINAL H-2B workers to Company A and Company B on a weekly basis.

b.     On or about January 10, 2012, Richardet caused CARDINAL to submit a Form 9142 to be presented to DOL. The Form 9142, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ thirty (30) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2012 to December 2012. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A and Company B.

c.     On or about January 20, 2012, Richardet caused CARDINAL to submit a Form I-129 application to be presented to CIS. The Form I-129, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ twenty-nine (29) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2012 to December 2012. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A and Company B. As a result, CIS approved the application for 29 foreign workers, and thereafter 12 foreign workers from Mexico entered the United States to work for CARDINAL.

d.     On or about April 4, 2012, and continuing until November 28, 2012, six (6) of the CARDINAL H2-B workers listed in paragraphs b. and c. worked for Company A and Company B pursuant to the agreement referenced in paragraph a. Company A and Company B paid CARDINAL a total of $53,386.75 for wages of the leased labor received in 2012.

2013 Leased Workers

e.     At a time before April 2013, Richardet agreed with Company A, Company B and Company C, to lease CARDINAL H-2B workers to Company A, Company B and Company

7

C on a weekly basis.

        f.      On or about January 24, 2013, Richardet caused CARDINAL to submit a Form 9142 to be presented to DOL. The Form 9142, which was signed by Richardet under penalty of perjury, stated that CARDINAL would seasonally employ thirty (30) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2013 to December 2013. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company B and Company C.

        g.      On or about January 24, 2013, Richardet caused CARDINAL to submit a Form I-129 application to be presented to CIS. The Form I-129, which was signed by Richardet under penalty of perjury, stated that CARDINAL would seasonally employ thirty (30) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2013 to December 2013. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to the Company A, Company B and Company C. As a result, CIS approved the application for 30 foreign workers, and thereafter 14 foreign workers from Mexico entered the United States to work for CARDINAL.

        h.      On or about April 3, 2013, and continuing until November 26, 2013, ten (10) of the CARDINAL H2-B workers listed in paragraphs f. and g. worked for Company A, Company B and Company C pursuant to the agreement referenced in paragraph e. Company A, Company B and Company C paid CARDINAL a total of $145,324.94 for wages of the leased labor received in 2013.

8

2014 Leased Workers

i.     At a time before April 2014, Richardet agreed with Company A, Company B and Company C, to lease CARDINAL H-2B workers to Company A, Company B and Company C on a weekly basis.

j.     On or about February 10, 2014, Richardet caused CARDINAL to submit a Form 9142 to be presented to DOL. The Form 9142, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ thirty-one (31) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2014 to December 2014. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company B, and Company C.

k.     On or about February 10, 2014, Richardet caused CARDINAL to submit a Form I-129 application to be presented to CIS. The Form I-129, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ thirty-one (31) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2014 to December 2014. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company B, and Company C. As a result, CIS approved the application for 31 foreign workers, and thereafter 24 foreign workers from Mexico entered the United States to work for CARDINAL.

l.     On or about March 28, 2014 and continuing until November 29, 2014 seventeen (17) of the CARDINAL H2-B workers listed in paragraphs j. and k. worked for Company A, Company B, and Company C pursuant to the agreement referenced in paragraph i.

Company A, Company B, and Company C paid CARDINAL a total of $237,834.59 for wages of the leased labor received in 2014.

2015 Leased Workers

m.      At a time before April 2015, Richardet agreed with Company A, Company B and Company C, to lease CARDINAL H-2B workers to Company A, Company B and Company C on a weekly basis.

n.      On or about February 27, 2015, Richardet caused CARDINAL to submit a Form 9142 to be presented to DOL. The Form 9142, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ thirty (30) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April,2015 to December 2015. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company B, and Company C.

o.      On or about February 27, 2015, Richardet caused CARDINAL to submit a Form I-129 application to be presented to CIS. The Form I-129, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ thirty (30) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2015 to December 2015. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company B, and Company C. As a result, CIS approved the application for 30 foreign workers, and thereafter 28 foreign workers from Mexico entered the United States to work for CARDINAL.

p.      On or about April 12, 2015 and continuing until November 25, 2015,

10

twenty-two (22) of the CARDINAL H2-B workers listed in paragraphs n. and o. worked for Company A, Company B, and Company C pursuant to the agreement referenced in paragraph m. Company A, Company B, and Company C paid CARDINAL a total of $260,186.40 for wages of the leased labor received in 2015.

### 2016 Leased Workers

q. At a time before April 2016, Richardet agreed with Company A, Company D, Company E, and Company F, to lease CARDINAL H-2B workers to Company A, Company D, Company E, and Company F on a weekly basis.

r. On or about April 4, 2016, Richardet caused CARDINAL to submit a Form 9142 to be presented to DOL. The Form 9142, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ thirty-five (35) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2016 to December 2016. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company D, Company E, and Company F.

s. On or about April 4, 2016, Richardet caused CARDINAL to submit a Form I-129 application to be presented to CIS. The Form I-129, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ thirty-five (35) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2016 to December 2016. However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company D, Company E, and Company F. As a result, CIS approved the application for 30 foreign workers, and thereafter 14

11

foreign workers from Mexico entered the United States to work for CARDINAL.

t.       On or about May 2, 2016 and continuing until November 21, 2016, ten (10) of the CARDINAL H2-B workers listed in paragraphs r. and s. worked for Company A, Company D, Company E, and Company F pursuant to the agreement referenced in paragraph q.  Company A, Company D, Company E, and Company F paid CARDINAL a total of $194,660.96 for wages for the leased labor received in 2016.

### 2017 Leased Workers

u.       At a time before April 2016, Richardet agreed with Company A, Company E, and Company F to lease CARDINAL H-2B workers to Company A, Company E, and Company F on a weekly basis.

v.       On or about March 2, 2017, Richardet caused CARDINAL to submit a Form 9142 to be presented to DOL.  The Form 9142, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ nineteen (19) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2017 to December 2017.  However, this statement was knowingly and falsely made as Richardet intended to lease, for a profit, a number of the aliens requested to Company A, Company E, and Company F.

w.       On or about March 2, 2017, Richardet and others caused CARDINAL to submit a Form I-129 application to be presented to CIS.  The Form I-129, which was signed under penalty of perjury, stated that CARDINAL would seasonally employ nineteen (19) foreign workers to provide landscaping and groundskeeping labor exclusively for CARDINAL in Jefferson County, St. Charles County and St. Louis County, Missouri, during the time period April 2017 to December 2017.  However, this statement was knowingly and falsely made as Richardet intended

12

to lease, for a profit, a number of the aliens requested to Company A, Company E, and Company F. As a result, CIS approved the application for 19 foreign workers, and thereafter 14 foreign workers from Mexico entered the United States to work for CARDINAL.

              x.      At a time after March 2, 2017, but before August 2017, Richardet agreed to lease CARDINAL H-2B workers to Company G on a weekly basis to perform services related to gutter installation.

              y.      On or about March 29, 2017 and continuing until December 5, 2017, nine (9) of the CARDINAL H2-B workers listed in paragraphs v. and w. worked for Company A, Company E, Company F, and Company G pursuant to the agreement referenced in paragraph u. Company A, Company E, Company F, and Company G paid CARDINAL a total of $88,422.38 for wages of the leased labor received in 2017.

All in violation of Title 18, United States Code, Section 371.

## **FORFEITURE ALLEGATION**

The United States Attorney further alleges there is probable cause that:

              1.      Pursuant to Title 18, United States Code, Sections 982(a), upon conviction of a conspiracy to commit an offense in violation of Title 18, United States Code, Section 1546(a) as set forth in Count I, the defendants shall forfeit to the United States of America any property, real or personal, that constitutes, or is derived from, or is traceable to, the proceeds obtained directly or indirectly from the commission of the offense.

              2.      Subject to forfeiture is a sum of money equal to the total value of any property, real or personal that constitutes, or is derived from, or is traceable to, the proceeds obtained directly or indirectly from the commission of the offense.

13

3.    If any of the property described above, as a result of any act or omission of the

defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without

         difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p).

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

KYLE L BATEMAN, #996646DC
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

UNITED STATES OF AMERICA )
EASTERN DIVISION )
EASTERN DISTRICT OF MISSOURI )

I, Kyle T. Bateman, Assistant United States Attorney for the Eastern District of Missouri,

being duly sworn, do say that the foregoing information is true as I verily believe.

KYLE T. BATEMAN, #996646DC

Subscribed and sworn to before me this 19th day of July, 2019.

CLERK, U.S. DISTRICT COURT

By: _____
DEPUTY CLERK